UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER SAUNDERS, BRYANT
KURTZMAN, BEVERLY O'HARA, and
LINDA FENLON, in their individual capacities
and on behalf of all similarly situated individuals,

                Plaintiffs,

v.                                      **DECISION AND ORDER**
                                                  06-CV-586S

FIRST PRIORITY MORTGAGE, INC.,

                Defendant.
_____

## I. INTRODUCTION

Plaintiffs in this putative class action, Christopher Saunders, Bryant Kurtzman, Beverly O'Hara, and Linda Fenlon, allege that Defendant, First Priority Mortgage, Inc. ("First Priority"), violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), by marking up fees associated with their respective home loans. Presently before this Court is First Priority's motion for summary judgment. For the following reasons, First Priority's motion is granted in part and denied in part.

## II. BACKGROUND

**A.**    **Facts**[1]

The facts of this case are brief and relatively undisputed. First Priority is a mortgage banker licensed in New York State. (Defendant's Amended Statement of Facts ("Def.'s

---

[1] This Court has accepted facts in each party's statement of facts to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

Stmnt."), ¶ 1; Docket No. 30.) Each Plaintiff applied for and received mortgage loans with First Priority. (Id., ¶ 2.) They closed their loans with First Priority on the following dates:

- Saunders – September 26, 2005 (id., ¶ 3)
- Kurtzman – March 29, 2005 (id., ¶ 4)
- O'Hara – February 17, 2005 (id., ¶ 5)
- Fenlon – February 28, 2005 (id., ¶ 6)

In connection with Saunders' loan, First Priority charged him the following relevant, itemized fees:

- $ 8.87 to Kroll Factual Data for credit report
- $ 17.73 to Kroll Factual Data for credit report
- $ 12.40 to Freddie Mac for credit report
- $ 1.08 to Freddie Mac for credit report
- $ 60.57 to CBC Companies for credit report
- $ 9.74 to Freddie Mac for credit report
   ======
- $110.39[2]

(Id., ¶ 10.)

**B.    Procedural History**

Christopher Saunders was the only current Plaintiff named in the original complaint, which was filed in this Court on August 29, 2006. (Docket No. 1.) By stipulation and leave from this Court, the presently named plaintiffs then filed an amended complaint on August 14, 2007. (Docket No. 22.) First Priority answered exactly one month later and filed its motion for summary judgment on October 26, 2007. (Docket Nos. 24, 26.)

On November 8, 2007, this Court issued a Decision and Order directing the parties to brief whether a ruling on the summary judgment motion would be appropriate before

---

[2]This is an itemized list of credit report fees. The fees are not itemized on Saunders' HUD-1 form. As reflected on that document, at the time of his initial application for the loan, Saunders paid a $50.00 credit report fee for services performed by Kroll Factual Data. (Saunders' HUD-1, Line No. 803, Exhibit B to Anderson Affidavit; Docket No. 28-3.) At closing, he paid an additional $60.39 described as the "balance of credit fee," for a total of $110.39. (Id., Line No. 807.)

class certification. (Docket No. 32.) Thereafter, on May 9, 2008, Plaintiffs filed a motion to compel further discovery, seeking a supplement to First Priority's document production and answers to interrogatories. That motion was never resolved because Plaintiff's withdrew it awaiting this Court's ruling on the summary judgment motion. (Docket No. 46)

After full briefing on the class certification issue, this Court lifted the stay and deemed it proper to first consider whether any named Plaintiff may maintain a claim for relief prior to consideration of class certification. (Docket No. 47.) Briefing on the summary judgment motion thus resumed and ultimately concluded when First Priority submitted their reply brief on October 1, 2010. (Docket No. 49.)

### III. DISCUSSION

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## B. First Priority's Motion

First Priority raises two related arguments in support of their motion. First, it notes that RESPA claims are subject to a one-year statute of limitations. See 12 U.S.C. § 2614. Considering the dates on which Plaintiffs' loans closed, it posits that Saunders is the only plaintiff who can maintain a timely claim. It then argues that because it did not mark up any fees in connection with the Saunders loan, complete dismissal of the suit is warranted.

Plaintiffs concede that the Saunders' claim is technically the only one that fits within the one-year limitation; they argue, however, that their factual allegations support both a finding that the statute of limitations should be equitably tolled and that further discovery is needed to flesh out their claims in this regard. Further, they dispute First Priority's contention that it did not violate RESPA in executing Saunders' loan. Each of these arguments will be discussed below.

### 1. Equitable Tolling

Plaintiffs argue that this doctrine is applicable here simply because of the nature of

the allegations that charge First Priority with fraudulent concealment. The Second Circuit has not yet ruled whether the doctrine of equitable tolling applies to RESPA claims. Yet generally, equitable tolling on the basis of fraudulent concealment is available if the plaintiff shows "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within [the applicable statutory period] of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." State of New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir.1988). Additionally, a Plaintiff must show that "extraordinary "circumstances prevented him from filing his petition on time, " see Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000), and he must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing. See Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). It is a "rare remedy to be applied in unusual circumstances," Wallace v. Kato, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007), and the burden of establishing its application lies with the plaintiff. Chapman v. Choice Care Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)

This Court finds that Plaintiffs have not satisfied this high standard. In cases concerning the related Truth in Lending Act ("TILA"), courts have "'held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations.'" Midouin v. Downey Sav. & Loan Ass'n, F.A. --- F. Supp. 2d ----, 2011 WL 4529646, at *9 n.12 (E.D.N.Y. Sept. 28, 2011) (quoting Cardiello v. Money Store, Inc., No. 00-CV-7332, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001)). This is sensible because, as with Plaintiffs' claim here, "[i]n cases involving TILA, if the very

nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." Cardiello, 2001 WL 604007, at *5; see also Futterman v. Wash. Mut. Bank, FA, No. 1:10-CV-01002, 2010 WL 5067650 (N.D.N.Y. Dec. 6, 2010) ("In a TILA or RESPA case, equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of her claims.").

Plaintiffs do not allege that First Priority engaged in conduct over and above the conduct giving rise to this claim. The main cause of action is that First Priority produced documents that were calculated to deceive Plaintiffs regarding the true costs and fees associated with their mortgage loan. These alleged misleading practices cannot serve as the basis for both Plaintiffs substantive claim and its equitable tolling claim. See Cardelllio, 2001 WL 604007, at *5; Midouin, 2011 WL 4529646, at *9 n. 12 (equitable tolling not available in RESPA claim); Moll v. U.S. Life Title Ins. Co. of N.Y., 700 F.Supp. 1284, 1291 (S.D.N.Y. 1988) ("Plaintiffs must show some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong*, that is designed to mask the existence of a cause of action.") (Internal citations omitted; emphasis in original).

Moreover, Plaintiffs do not explain how or when they became aware of certain facts that could give rise to a claim in August of 2006 (the time they filed the original complaint) or August of 2007 (time of amended complaint) but were unaware of those facts during the limitations period. This is also fatal to their argument. See Futterman, 2010 WL 5067650, at *3 (citing Barkley v. Olympia Mortgage Co., No. 04-CV-875, 2007 WL 2437810, at *17 (E.D.N.Y. Aug. 27, 2007). As such, Plaintiffs cannot avail themselves of the equitable tolling doctrine and Kurtzman's, O'Hara's, and Fenlon's RESPA claims are dismissed as

time-barred.

### 2. Saunders' RESPA Claim

There is no dispute that Saunders' claim is timely. Rather, the parties disagree over whether it is meritorious.

Section 8(b) of RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. §2607(b).

Violations under RESPA § 8(b) "generally take one of three forms: (1) 'mark-ups,' which involve one service provider reselling a product or service of another at a higher price without adding any additional value; (2) fees charged by service providers without providing anything of value in return, or, in the words of RESPA § 8(b), 'other than for services actually performed'; and (3) 'kickbacks,' which are fees that one service provider gives to another 'other than for services actually performed.'" Lang v. First Am. Title Ins. Co. of N.Y., --- F. Supp. 2d ----, No. 08-CV-31, 2011 WL 4054974, at *2 (W.D.N.Y. Sept. 12, 2011) (collecting Second Circuit cases describing types of RESPA claims).

The dispute here focuses on $23.19 in fees from Freddie Mac. Saunders appears to allege that First Priority violated RESPA by charging a fee without providing any service in return, or, alternatively, that First Priority "marked-up" the Freddie Mac fees. He argues that those fees, described by First Priority as stemming from credit report services provided by Freddie Mac, are fraudulent because Freddie Mac does not provide credit reporting services. (See Donald Thomas Declaration, ¶ 3; Docket No. 48-10.)

First Priority notes that Donald Thomas, the affiant above, is a non-party and has

not been certified as an expert in this case, but it does not dispute his position that Freddie Mac does not provide credit reporting services. Instead, it argues that it simply grouped the Freddie Mac charges together with other credit reporting charges (and labeled them as such) because "when Freddie Mac does its automated underwriting, it uploads a credit report into the system [and] we therefore considered the Freddie Mac charges to be related to his credit approval, so we grouped them together on his HUD-1 form." (Brooke Anderson Reply Affidavit, ¶ 6; Docket No. 49-1.) While this may be true, this Court cannot rule, at this time, that there is no genuine issue of material fact in this case. It remains unclear from the record from where the $23.19 Freddie Mac fee originates. Although First Priority argues that Saunders concedes that the fees are legitimate and simply mislabeled, it provides no citation for this proposition,[3] and its own statement of facts designates the fees as deriving from Freddie Mac for a "credit report." (See Def.'s Stmnt., ¶ 10.) Further, First Priority provides no documentary support for its proposition that the Freddie Mac fee instead comes from a charge that Freddie Mac incurred while uploading a credit report. In fact, the only documentation that First Priority does provide, which it describes as "true and correct copies of invoices," are devoid of any reference to Freddie Mac whatsoever. (See Anderson Affidavit, ¶ 13.) Instead, the invoices are highly abbreviated with unidentified numerical notations – and no effort is made at explanation.[4] (See Exhibit B to Anderson

---

[3]First Priority may be relying on a sentence in Plaintiff's memorandum of law, referring to the Freddie Mac fee, where Plaintiffs state that "credit reports and underwriting services are distinct settlement services that should be itemized separately." (Docket no. 48, p. 11). But this does not strike this Court as a "concession" that the fees are simply mislabeled. Instead, Plaintiffs are arguing, and this Court agrees, that because the Freddie Mac fee cannot truly be a "credit report fee" as it is labeled, there is confusion as to its provenance. Indeed, the next sentence reads: "At a minimum, further information is needed to evaluate Defendants' contentions." (Id.)

[4]An example of one such entry reads: "9999| 44751696| 2005-08-19|1231234344|Saunders Christopher|Merged Credit Rpt w/ AUS-CDR|1|1|.74|9.74|fpmi/krobinso" (Exhibit B to Anderson Affidavit.)

Affidavit; Docket No. 28-4.) Thus, there remains a question of fact concerning whether the $23.19 was a fabricated charge, a marked-up charge, or a legitimate charge. As the moving party, it is First Priority's burden to demonstrate the latter. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment."). But because First Priority's own statement of facts creates confusion on this issue, which it does not even attempt to clarify until its reply papers, and even then does so unconvincingly, it has not met its burden and its motion is therefore denied. See id.; see also Ernst Haas Studio v. Palm Press, Inc., 164. F.3d 110,112 (2d Cir. 1999) (new arguments are improperly raised for the first time in reply papers.)

### IV. CONCLUSION

For the following reasons, First Priority's motion is granted in part and denied in part.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated:   March 4, 2012
         Buffalo, New York

                                             /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             Chief Judge
                                             United States District Court